# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

MCNEESE PHOTOGRAPHY, L.L.C., )
an Oklahoma limited liability company, )
and DAVID MCNEESE, an individual, )
 )
            Plaintiffs, )
 )
vs. )   Case No. CIV-14-503-D
 )
ACCESS MIDSTREAM PARTNERS, )
L.P., a Delaware limited partnership, )
 )
            Defendant. )

## ORDER

Plaintiffs McNeese Photography, L.L.C. and David McNeese move the Court to reconsider an August 11, 2014 Order (the Order), which granted, in part, Defendant's Motion to Dismiss [Doc. No. 21].[1] Relying on the Ninth Circuit Court of Appeals' decision in *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015), Plaintiffs contend there has been an intervening change in controlling law that requires the Court to vacate the dismissal of McNeese Photography's copyright infringement claims. Defendant has filed its response in opposition [Doc. No. 109]. The matter is fully briefed and at issue.

---

[1]This case was reassigned to the undersigned on October 8, 2015 for further proceedings [Doc. No. 93].

## BACKGROUND

### NATURE OF THE CASE AND PROCEDURAL HISTORY

The following facts are taken from the August 11, 2015 Order. David McNeese is a photographer and owner of McNeese Photography. On June 12, 2011, Mr. McNeese registered "contactsheet.pdf" with the United States Copyright Office. Contactsheet.pdf is composed of 285 photographs, mostly related to the oil and gas industry. On January 22, 2014, Mr. McNeese registered "012214_48 photos," containing 48 photographs, with the United States Copyright Office. Plaintiffs allege that between 2011 and 2013, they granted a non-transferable license to Chesapeake Energy Corp. for the aforementioned photographs. They assert that when Chesapeake sold its interest in Chesapeake Midstream Development, L.L.C. to Defendant Access Midstream Partners, L.P. (AMP), Chesapeake transferred the copyrighted photographs to AMP without Plaintiffs' permission and AMP then used them for various business purposes. Plaintiffs allege that when they inquired as to which of their copyrighted photographs were in AMP's possession, AMP fraudulently provided an incomplete list of the photographs it had and continued to use copyrighted photographs not on the list.

Defendants moved to dismiss the Complaint for failure to state a claim upon which relief could be granted on the following grounds: (1) the photographs were not

entitled to copyright protection because they lacked the requisite "originality," (2) McNeese Photography was not the owner of the photographs in question and thus had no standing to pursue a copyright claim, (3) the fraud claims were preempted by the Copyright Act (the Act), and (4) as to the "012214_48 photos," Plaintiffs were not entitled to statutory damages since Mr. McNeese did not register his copyright over them until after the alleged infringement began. The court granted Defendants' motion as to the second and fourth grounds, holding McNeese Photography failed to allege sufficient facts showing it was the legal or beneficial owner of the copyrighted material, and since Plaintiffs conceded that the copyright for "012214_48 photos" was registered after the alleged infringement, statutory damages were not available as to those photos.

## THE *Minden* DECISION

Nearly a year after the Order was entered, the Ninth Circuit rendered its decision in *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015). There, the plaintiff Minden Pictures, Inc. ("Minden") was a licensing agent for individual photographers. Pursuant to "Agency Agreements" with the photographers, Minden displayed copyrighted photographs on its website and granted licenses to certain end users, which included textbook publishers, for the limited use of the photographs. Among other things, the agreements contained an authorization clause

3

in which the photographers agreed to appoint Minden as sole and exclusive agent and representative with respect to the licensing of any and all uses of images and conferred upon Minden the unrestricted, exclusive right to distribute, license, and/or exploit the images without seeking special permission to do so.

Each agreement contained a copyright clause that stated all images remained the sole and exclusive property of the photographer, including the copyright, but many also stated the copyright would be held by Minden solely for licensing purposes as described therein. In 2010, many of Minden's affiliated photographers executed assignments that purported to convey to Minden an ownership interest in the copyrights. Under the agreements, Minden was authorized to litigate and settle any lawsuits over unauthorized uses of the photographs, and Minden agreed to reassign its ownership back to the photographers immediately upon the conclusion of any such litigation.

One company to which Minden granted licenses was an educational publisher, John Wiley & Sons ("Wiley"). According to Minden's complaint, Wiley exceeded the scope of the limited licenses it held by, *inter alia*, printing hundreds of thousands of copies of textbooks containing photographs licensed by Minden despite having a license to print only 20,000 copies. Minden alleged that both the Agency Agreements and the assignments executed in 2010 gave it a sufficient ownership interest in the

photographs to allow it to bring an infringement suit. Similar to the present case, Wiley moved to dismiss Minden's complaint, arguing that because Minden did not have an ownership interest in the copyrighted photographs it had licensed to Wiley, it lacked standing under the Act to bring an infringement suit. The Northern District of California granted Wiley's motion and Minden appealed.

The Ninth Circuit reversed. Exercising de novo review, it found that the Agency Agreements between Minden and the photographers conferred sufficient standing under the Act for Minden to bring an infringement action against Wiley. *See Minden*, 795 F.3d at 1002. The court of appeals began its analysis by noting the "exclusive rights" in a copyright were enumerated in 17 U.S.C. § 106, which, among other things, granted the legal or beneficial owner of an exclusive right under a copyright to reproduce and display the work. *Id*. Such exclusive rights, the court noted, could be transferred in whole or in part to someone else under the Act's provisions. *See id.* (citing 17 U.S.C. § 201(d)(1)). This is known as the "divisibility principle." The court further observed that "[i]t is established law under the 1976 Act that any party to whom such a right has been transferred – whether via an assignment or an exclusive license – has standing to bring an infringement action based on that right." *Id*. at 1003 (citing *Sybersound Records, Inc. v. UAV Corp*., 517 F.3d 1137, 1146 (9th Cir. 2008) (further citations omitted)). "Thus a party granted an exclusive

license to display a work may bring an infringement action challenging the unauthorized display of that work by another party, even though the licensee does not hold legal title to the work." *Minden*, 795 F.3d at 1003 (citations omitted). However, a party who held a "nonexclusive license" (such as Wiley) *could not* bring an infringement suit. *Id.* (citing 17 U.S.C. § 101; *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir.1982)).

The court observed there was no dispute that (1) the Agency Agreements – by granting Minden the right to reproduce and authorize reproduction of the photographs – gave it a legally cognizable right to the photographers' copyrights, and (2) as the photographers' licensing agent, "Minden had the right 'to authorize' both the distribution and the display of the photographs by granting licenses to third parties such as Wiley." *Id*. The only issue was the *nature* of Minden's interest, i.e., whether it possessed an exclusive or non-exclusive right in the copyrights. The court held the Agency Agreements, as envisioned under the "divisibility principle," conveyed Minden a sufficient ownership interest in the copyrights so that it had standing under the Act to bring the infringement action:

> Under the Agency Agreements, Minden is the "sole and exclusive agent and representative with respect to the Licensing of any and all uses" of the photographs. That is, the photographers have promised that Minden, and only Minden, will have the power, as the photographers' licensing agent, to authorize third parties to reproduce, distribute, and display the

photographs. That the photographers have retained some limited degree of authority to grant licenses themselves does not eliminate Minden's interest in the copyright as the sole entity to act as the photographers' licensing agent. It merely means that both Minden and the photographers, under the terms of the Agreements, can prevent those third parties who have not received permission to use the photographs from using them. To hold otherwise would be inconsistent with the divisibility principle embodied by the 1976 Act.

To hold otherwise would also be inconsistent with common sense. If the photographers had never entered into the Agency Agreements, but instead had issued licenses directly to Wiley, there would be no doubt that they could bring infringement actions over the violations Minden alleges in its complaint. We see no reason why, having appointed Minden to manage the commercial use of their photographs in the first instance as their licensing agent, the photographers should not also be able to rely on Minden to protect and defend the licenses that it has issued on their behalf. Nothing in the text of the Copyright Act, nor in the Agency Agreements, compels a contrary conclusion.

*Minden*, 795 F.3d at 1005.

## THE PRESENT DISPUTE

Plaintiffs challenge that portion of the Order that dismissed McNeese Photography's claims for copyright infringement and aiding and abetting on the grounds it did not own the photographs in question and thus had no standing to pursue such claims. Plaintiffs contend that, like *Minden*, McNeese Photography has the exclusive right to license McNeese's photographs and therefore, pursuant to *Minden*, has standing under the Act to pursue the dismissed claims. Mot. to Reconsider at 6, 10. Defendant contends Plaintiffs' motion should be denied because

7

(1) *Minden* is not controlling law, (2) the Complaint is devoid of any allegation that McNeese granted any exclusive license to the photographs to McNeese Photography, and (3) any subsequent transfer of such interest would be ineffective, since standing is determined at the time the complaint is filed. Resp. to Mot. to Reconsider at 5.

**DISCUSSION**

Technically, "[a] motion for reconsideration [is] not recognized by the Federal Rules of Civil Procedure." *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n. 3 (10th Cir. 2002). The Court construes such motions as filed pursuant to Rule 59(e)(motions to alter or amend a judgment) or Rule 60(b)(relief from a final judgment, order, or proceeding), depending on the asserted justification for, and timing of, the motion. *Id.*; *compare Servants of Paraclete v. John Does I-XVI*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("Grounds warranting a motion to reconsider [under Rule 59(e)] include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."), *with* Fed. R. Civ. P. 60(b) (justifying relief for reasons such as "mistake, inadvertence, surprise . . . excusable neglect . . . newly discovered evidence . . . [or] fraud"). A motion to reconsider is thus appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Servants of Paraclete*, 204 F.3d at 1012. It should not be used to revisit issues already addressed

or advance arguments that could have been raised earlier. *Id*.

Plaintiffs' motion relies on Rule 59(e), which allows for reconsideration upon an intervening change in controlling law. With respect to what constitutes an "intervening change in controlling law," sister courts (including those in this circuit) have held the "controlling law" at issue must be precedential. *See Brueningsen v. Resort Express Inc.*, No. 2:12-CV-843-DN, 2016 WL 1181683, at *2 (D. Utah Mar. 25, 2016) ("While *Perez* is the controlling law of the Ninth Circuit . . . '[t]he decisions of the Ninth Circuit are not binding on this circuit.'") (citing *FDIC v. Daily*, 973 F.2d 1525, 1532 (10th Cir. 1992)); *Patterson v. Sapperstein*, No. 2:05-CV-900-TS, 2006 WL 3375199, at *1 (D. Utah Nov. 21, 2006) ("[w]hile Plaintiff cites numerous non-binding cases from other jurisdictions, he neither argues nor cites an intervening change in the controlling law, and the Court finds none."); *United States ex rel. Carter v. Halliburton Co.*, No. 1:11-cv-602, 2016 WL 634656, at *2 (E.D. Va. Feb. 17, 2016) (decision from First Circuit Court of Appeals was not intervening change in controlling law since it was nonbinding); *McNamara v. Royal Bank of Scotland Grp, PLC*, No. 11-cv-2137, 2013 WL 1942187, at *3 (S.D. Cal. May 9, 2013) ("'controlling law' under Rule 59(e) refers specifically to binding precedent only."); *Local 703 v. Regions Fin. Corp.*, No. CV -10-2847-IPJ, 2011 WL 4431154, at *1 (N.D. Ala. Sept. 7, 2011) ("[A] decision by the Second Circuit Court of Appeals

is not binding on this Court, and therefore, is not an intervening change in controlling law."); *United States v. Manzo*, No. 97-289, 2006 WL 2845763, at *7 (D.N.J. Sept. 29, 2006) (concluding that a decision by the Tenth Circuit Court of Appeals was not an intervening change in the controlling law because it was not controlling precedent).

In light of the above standard, the Court finds Plaintiffs' motion should be denied. First, Plaintiffs' have not presented the Court with evidence of an intervening change in *controlling* law. The Court is not controlled by decisions from the Ninth Circuit and the *Minden* decision is not binding precedent. Moreover, the *Minden* decision did not usher in a new facet of copyright law. Rather, as to the facts of this case, it restated the law as it had been concerning standing in the copyright context. *Compare Nafal v. Carter*, 540 F. Supp. 2d 1128, 1142-43 (C.D. Cal. 2007) (holding plaintiff was not a co-exclusive licensee because, *inter alia*, he had no discretion to decide when an alleged infringer should be sued).

Moreover, the facts of the present case and *Minden* are dissimilar. Plaintiffs' Complaint broadly asserted Plaintiffs possessed "exclusive rights" in the copyrights at issue. Their response to Defendant's Motion to Dismiss contended that a reasonable factfinder "could reasonably conclude" McNeese Photography was a "beneficial owner" under the Act, and Mr. McNeese should be allowed to develop

and present evidence of McNeese Photography's interest. Resp. to Mot. to Dismiss at 22. Thus, although Plaintiffs contend they presented sufficient allegations of an "exclusive license" held by McNeese Photography, such were deemed insufficient to state a claim, and a motion to reconsider is not the proper vehicle for Plaintiffs to develop their standing argument or revisit prior decisions. *Servants of Paraclete*, 204 F.3d at 1012. The Court finds no good cause to vacate the previous Order as to McNeese Photography's standing and Plaintiffs' motion, therefore, is denied.

## CONCLUSION

Plaintiffs' Motion for Reconsideration [Doc. No. 106] is accordingly **DENIED** for the reasons set forth herein.

**IT IS SO ORDERED** this 4th day April, 2016.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE