# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID MCNEESE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-503-D |
| | ) | |
| ACCESS MIDSTREAM | ) | |
| PARTNERS, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff David McNeese (McNeese) brings this action against Defendant Access Midstream Partners, L.P. (Access) for copyright infringement and fraud. Before the Court is Access's Motion for Summary Judgment ("Mot.") [Doc. No. 71], to which McNeese has filed his response in opposition ("Resp.") [Doc. No. 91]. A hearing was held on January 9, 2017 and the parties submitted supplemental briefs [Doc. Nos. 142, 143] in response to certain questions from the Court. The matter is fully briefed and at issue.

The material facts set forth *infra* are undisputed and, along with all reasonable inferences, are viewed in the light most favorable to McNeese. *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015). To determine which facts are not in genuine dispute, the Court disregarded any unsupported allegations, legal conclusions, or legal arguments couched as facts which appeared in either party's

statement of material facts or response thereto. *See 1st Source Bank v. Village of Stevensville*, 947 F.Supp.2d 934, 937 (N.D. Ind. 2013) ("The purpose of [Rule 56] statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. ... In reviewing a party's statement of material facts, a court must 'eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement.'") (citations omitted); *Chavez v. County of Bernalillo*, 3 F.Supp.3d 936, 949 n. 4 (D.N.M. 2014) (same).

Access contends certain facts are undisputed because McNeese was one day late in responding to its First Requests for Admissions and, according to Access, such requests are deemed admitted. Mot. at 2, n. 2. It is true that under Rule 36, when a party fails to make a timely response to a request for admission, the truth of the matter contained in the request is generally deemed "admitted" and "conclusively established." Fed. R. Civ. P. 36(a)(3), (b).[1] However, the purpose of Rule 36 is to expedite trial by eliminating the necessity of proving undisputed and

---

[1] The requests at issue asked McNeese to admit (1) that certain images were not, contrary to his copyright application, first published as a unit on May 11, 2011 and (2) were not all published within the same calendar year. Mot. at 2-3. Requests for admission which ask a party to admit or deny a matter of law are generally impermissible; however, "[t]hat [a request for admission] has a legal component does not render the [request] impermissible if it seeks an answer based on the application of the law to the facts." *S.E.C. v. Goldstone*, 300 F.R.D. 505, 528 (D.N.M. 2014) (citation omitted); 7 *Moore's Federal Practice* § 36.10[8] at 36-25 (3d ed. 2016).

peripheral issues, *Keen v. Detroit Diesel Allison*, 569 F.2d 547, 554 (10th Cir. 1978), and courts should not employ the rule "to establish facts which are obviously in dispute or to answer questions of law." *Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997) (citations omitted); *Champlin v. Okla. Furniture Mfg. Co.*, 324 F.2d 74, 76 (10th Cir. 1963) (responses to requests for admission may be established "as undisputed material facts in the case, provided, the parties are in agreement about such facts."). Thus, courts should admit untimely answers to requests for admission where it would aid in determining the material facts and not unfairly prejudice the opposing party. *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F.Supp.3d 426, 433 (D. Del. 2014); 8B Wright, Miller & Marcus, *Federal Practice and Procedure* § 2257 at 345 (3d ed. 2010).[2]

Accordingly, the Court exercises its discretion and considers McNeese's responses in determining the merits of Access' motion. Access has not been substantially prejudiced, since the delay – one day – was not excessive, and Access makes no argument to the contrary. Moreover, the Court finds that consideration of McNeese's responses would aid in determining the material facts at issue.

---

[2] As a result of this discretion, "the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted." *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) (citation omitted). A party seeking to amend or withdraw its responses to a request for admission may do so even without a formal motion. "[A] withdrawal 'may be imputed from a party's actions,' including the filing of a belated denial." *Id.* (citations omitted).

# FACTUAL BACKGROUND

McNeese owns and operates McNeese Photography, a company specializing in photography and videography. Access is a natural gas services provider. In 2011, McNeese took 285 photographs of Chesapeake Energy Corporation's property, equipment, and employees, which he collectively entitled "contactsheet.pdf" (hereinafter "Group 1"). The photographs contained in Group 1 were taken at different angles, degrees, depths, and in various shades of lighting. McNeese filed an application with the United States Copyright Office to register Group 1 for copyright protection, and on June 12, 2011, the United States Copyright Office issued a Certificate of Registration with registration number VA 1-777-187. According to the copyright certificate, the images contained in Group 1 were first published on May 11, 2011.[3]

---

[3] Pursuant to regulations passed by the Copyright Office, each photograph, whether registered separately or combined into one registration, has an independent copyright life. *See* 37 C.F.R. § 202.3(b)(10); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc*., 722 F.3d 591, 598 (4th Cir. 2013) ("collective work registrations [are] sufficient to permit an infringement action on behalf of component works, at least so long as the registrant owns the rights to the component works as well."); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co*., 747 F.3d 673, 685 (9th Cir. 2014) (same); *see also Szabo v. Errisson*, 68 F.3d 940, 943 (5th Cir. 1995) ("[W]hen one copyrights a collection, the copyright extends to each individual work in the collection even though the names of each work are not expressly listed in the copyright registration."), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

From 2011 to 2013, McNeese granted Chesapeake a non-transferable limited license for certain photographs he took. McNeese, however, retained all copyright and ownership rights in the images. In December 2012, Chesapeake sold a subsidiary, Chesapeake Midstream Development, LLC, to Access. In connection with the sale, Chesapeake copied and transferred many of McNeese's photographs to Access. In 2013, McNeese took an additional 48 photos of Access's property, equipment, and employees which he entitled "012214_48 photos" (hereinafter "Group 2"). Like Group 1, the photographs in Group 2 were taken at different angles, degrees, depths, and various shades of lighting. McNeese filed an application with the United States Copyright Office to register Group 2 for copyright protection, and on January 22, 2014, the Copyright Office issued a Certificate of Registration for the photographs with the registration number VAu 1-157-473.[4] Three photographs in Group 1, entitled "midstream_045.jpg," "midstream_068.jpg," and "midstream_110.jpg," were inadvertently included in Group 2.

---

[4] "The 'u' represents that the works are unpublished." *Family Dollar Stores, Inc. v. United Fabrics Intern., Inc*., 896 F.Supp.2d 223, 225 (S.D.N.Y. 2012) (citing *Determined Prods., Inc. v. Koster*, No. 92-1697, 1993 WL 120463, at *1 (N.D. Cal. Apr. 13, 1993)); *see also Olem Shoe Corp. v. Washington Shoe Co*., No. 09-23494, 2011 WL 6202282, at *7 (S.D. Fla. Dec. 1, 2011) (noting that VAu designation "signifies an unpublished work which implies that the application failed to disclose that the work was previously published.").

Unknown to McNeese, Access used a number of photographs from Group 1 and Group 2 in its business materials, including a recruiting brochure, trade booth graphic, email invitation, computer wallpaper, investor relations folder, and Access webpages. McNeese sued Access and Chesapeake[5] for copyright infringement, aiding and abetting copyright infringement, and fraud, alleging, *inter alia*, that Access wrongfully reproduced the photographs without his permission and concealed the extent of its use of the photographs.

Access moved for summary judgment on each of McNeese's claims. It contended that (1) McNeese's copyright registrations were invalid; (2) McNeese did not own valid copyrights in the photographs, (3) McNeese could not establish the requisite "substantial similarity" necessary to establish his copyright infringement claim, (4) McNeese's derivative claims for infringement failed as a matter of law, and (5) McNeese's fraud claim lacked evidentiary support.

Subsequent to Access' motion, McNeese submitted *new* registration applications for the photographs contained in Group 2 and obtained nine (9) new copyright registrations [Doc. No. 140-1]. These new registrations were in part the subject of a January 9, 2017 hearing in which the Court heard argument from counsel regarding (1) what images were included in McNeese's new registration applications; (2) what responsive action was taken on said applications; and (3)

---

[5] McNeese subsequently dismissed his claims against Chesapeake [Doc. No. 49].

whether the Court should utilize the certification procedure set forth in 17 U.S.C. § 411(b) in response to Access' allegations that McNeese's copyright registration for Group 2 was invalid due to its inclusion of previously published photos. After reviewing the parties' principal and supplemental briefs, the Court rules as follows.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105 (10th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). The movant may make such a showing through the pleadings, depositions, other discovery materials, and affidavits. *Water Pik, Inc. v. Med-Systems, Inc*., 726 F.3d 1136, 1142 (10th Cir. 2013). At the summary judgment stage, the Court views all of the facts in the light most favorable to the non-movant and draws all reasonable inferences from the record in favor of the non-moving party. *Schaffer v. Salt Lake city Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).

Although the nonmoving party is entitled to all reasonable inferences from the record, the nonmovant must still identify sufficient evidence requiring submission to the jury in order to survive summary judgment. *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007). Thus, if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant

points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue. *Water Pik*, 726 F.3d at 1143-44. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal–Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998).

## DISCUSSION

Copyright protection extends to original works of authorship fixed in any tangible medium of expression. 17 U.S.C. § 102(a); *Blehm v. Jacobs*, 702 F.3d 1193, 1200 (10th Cir. 2012) (noting that § 102 enshrines the "fundamental tenet" that copyright "protection extends only to the author's original expression and not to the ideas embodied in that expression.") (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd*., 9 F.3d 823, 836 (10th Cir. 1993)). In order to establish a prima facie case of copyright infringement, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1138 (10th

Cir. 2016).[6] The plaintiff bears the burden of proof as to both elements. *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1171 (10th Cir. 2009).

With respect to the first element, "[a] plaintiff's presentation of a certificate of registration from the U.S. Copyright Office usually constitutes prima facie evidence of a valid copyright and of the facts stated in the certificate." *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005) (citing 17 U.S.C. § 410(c)). "Upon presentation of such a certificate, the defendant bears the burden to overcome the presumption of validity. ... To rebut the presumption, however, a defendant sued for infringement 'must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement.'" *Id.* (citations omitted).

In rebutting the presumption of validity, a defendant may "contend that a copyright registration is invalid because of noncompliance with formal registration requirements or rules, such as the withholding or misstatement of information in connection with the registration application." *Lumos, Inc. v. LifeStrength, LLC*, No. 2:12-cv-1196, 2014 WL 4355451, at *2 (D. Utah Sept. 3, 2014) (quoting *L.A.*

---

[6] "One can own a copyright without registering. When a photographer has fixed an image in a tangible medium of expression, he owns the copyright, even though he has not registered it with the Copyright Office. Registration is permissive, not mandatory, and may be made long after the work comes into existence." *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673, 685 (9th Cir. 2014) (citing 17 U.S.C. §§ 102(a), 408(a)).

*Printex Indus., Inc. v. Le Chateau, Inc*., No. 11 Civ. 4248(LTS), 2012 WL 987590, *4 (S.D.N.Y. Mar. 23, 2012)).

The second element consists of multiple inquiries:

> First [the Court] must determine whether, as a factual matter, the defendant copied plaintiff's work. ... Second, as a mixed question of law and fact, [the Court] must evaluate whether the elements copied by the defendant are protected by copyright. ... In essence, this second consideration asks whether defendant took "too much" of plaintiff's work; it asks what the level of "sameness" is between the two works.

*Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1204 (10th Cir. 2014) (citations and internal quotations omitted). The Court may address either step first. *Gates Rubber Co. v. Bando Chem. Indus., Ltd*., 9 F.3d 823, 833 (10th Cir. 1993).

## I.     GROUP 1[7]

As stated, a copyright holder may only sue for infringement of that copyright if it possesses a valid copyright registration. *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010). The Copyright Act permits the registration of multiple works as a single work. 17 U.S.C. § 408(c)(1). Copyright regulations divide these "single work registrations" into published and unpublished collections. *See* 37 C.F.R. §

---

[7] The Court addresses the validity of the subject copyrights in the order of their respective registration.

202.3(b)(4)(i). In order to qualify as a "single work" registration, the Register of Copyrights states that:

> (i) For the purpose of registration on a single application and upon payment of a single registration fee, the following shall be considered a single work:
>
> (A) In the case of published works: All copyrightable elements that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same.

37 C.F.R. § 202.3(b)(4)(i)(A). Registration as a "published" collection requires that all of the constituent elements of the collection have been published together as a collection. *United Fabrics Int'l, Inc. v. C & J Wear, Inc.*, 630 F.3d 1255, 1259 (9th Cir. 2011) ("A necessary element of a published-collection copyright is that the collection is sold, distributed or offered for sale concurrently.") (citing 37 C.F.R. § 202.3(b)(4); 17 U.S.C. § 101). For unpublished works, "there is no such requirement." *Id.* (citing 37 C.F.R. § 202.3(b)(4)(i)(B)).

Access disputes the validity of McNeese's copyright as to Group 1 on the ground that the photographs were not published together as a single unit as is required for a single work registration of a published collection. Access' motion, however, rests this argument mainly on its contention that McNeese's belated responses to its Requests for Admission are deemed confessed. As stated above, however, the Court declines to deem such requests confessed and has considered

those responses in evaluating Access' motion. Both McNeese's answers and his affidavit in support of his response to Access' motion deny that the images contained in Group 1 were not all published in the same calendar year. As reflected in the registration, McNeese asserts that the first time he transferred the images to anyone was when he delivered them to Chesapeake in May 2011. Viewing the evidence in the light most favorable to McNeese, including all reasonable inferences, the record supports the finding or inference that the images contained in Group 1 were first published as a single group on May 11, 2011. Access' motion on this issue is denied.[8]

## II.    GROUP 2

Access also argues that McNeese's certificate of registration as to Group 2 is invalid because it contains published works that were originally contained in Group 1. McNeese admits this was done, albeit erroneously.

It is true that "a published design included in an unpublished collection copyright registration application cannot be registered as part of the collection." *Family Dollar Stores, Inc. v. United Fabrics Intern., Inc.*, 896 F.Supp.2d 223, 230 (S.D.N.Y. 2012). "Where the applicant seeks registration as an unpublished work

---

[8] Access also contends the certificate of registration as to Group 1 is invalid because photos from Group 1 were included in Group 2. Mot. at 12. Although such an erroneous inclusion may affect the validity of Group 2's registration, as discussed herein, Access has not presented any persuasive argument or authority establishing how this fact invalidates Group 1's registration.

and provides the Office with a statement of facts which clearly show that publication has occurred, the Office will not register a claim to copyright in the work as unpublished." *Family Dollar*, 896 F.Supp.2d at 230 (quoting United States Copyright Office, *Compendium of Office Practices II* § 904(5)). Indeed, wrongly identifying a number of published individual works as an unpublished collection has been deemed "*a fundamental registration error.*" *Id.* (quoting *Determined Prods., Inc. v. Koster*, No. 92-1697, 1993 WL 120463, at *1 (N.D. Cal. Apr. 13, 1993) (emphasis added)); *see also Palmer/Kane LLC v. Rosen Book Works LLC*, 15-CV-7406, 2016 WL 3042895, at *4 (S.D.N.Y. May 27, 2016).

However, McNeese's error in itself does not invalidate the registration or render the certificate of registration incapable of supporting an infringement action. Inaccuracies in a certificate of registration ordinarily do not affect its validity unless (1) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (2) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration. *See* 17 U.S.C. § 411(b); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852–53 (9th Cir. 2012). An owner of a copyright may file an application for supplemental registration "to correct an error in a copyright registration or to amplify the information given in a registration." 17 U.S.C. §

408(d). "The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration." *Id.*

It is undisputed that the Group 2 compilation contains published works that were originally contained in Group 1. Viewed in the light most favorable to McNeese, however, the record does not demonstrate that McNeese knowingly included the photographs such that the error was anything other than an inadvertent mistake, or that McNeese intended to defraud the Copyright Office.[9] McNeese argues that the nine new registrations render Access' argument moot, thereby necessitating denial of its motion. According to McNeese, the fact that the Register of Copyrights issued new registrations evidences that the mistake, if known, would not have caused the Register to refuse registration. However, McNeese did not submit supplemental registrations as represented in his response brief. Upon learning of the error, McNeese submitted *new* applications and obtained *new* copyright registrations for the photographs in question. As a consequence, McNeese has not refuted Access' assertion that the error, if known, would have resulted in a denial. Accordingly, the Court finds Access should be granted summary judgment on this issue.

---

[9] Because the Court has found that McNeese did not knowingly include false or inaccurate information in the application, the Court need not seek advice from the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2). For such procedure to be applicable, the inaccurate information must first be found to have been included "with knowledge that it was inaccurate." *See* 17 U.S.C. § 411(b)(1)(A). This is not the case here.

Moreover, in order to maintain a copyright infringement action, a plaintiff must possess a valid certificate of registration at the time of suit. 17 U.S.C. § 411(a). In this regard, McNeese may not pursue an infringement claim regarding photographs for which he did not possess a valid registration. To the extent McNeese intends to assert the new registrations as the basis for his infringement claim, such action is inappropriate.

## III. OWNERSHIP OF VALID COPYRIGHTS[10]

Access next contends McNeese does not own valid copyrights in the photographs because they lack the requisite originality. Specifically, Access contends the photographs, which mainly consist of shots of pipeline equipment taken at various angles, are "purely descriptive" and "not sufficiently original to be protected by copyright law." Mot. at 15-16. Indeed, in *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340 (1991), cited by Access, the Supreme Court acknowledged it is "universally understood" that "there can be no valid copyright in facts" and explained that "[n]o one may claim originality as to facts ... because facts do not owe their origin to an act of authorship." *Id.* at 344 (internal quotations and citation omitted).

Originality, in copyright parlance, means only that the work was independently created by the author (as opposed to copied from other works), and

---

[10] In light of the Court's finding, the remaining discussion applies only to the photographs comprising Group 1.

possesses at least some minimal degree of creativity. *Savant Homes*, 809 F.3d at 1139 (citing *Feist*, 499 U.S. at 345). "The required level of creativity is 'extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be.'" *Id.* With this minimal creative burden in mind, the Court finds there is a genuine dispute of fact over the originality of the photographs at issue.

It is true that purely descriptive photographs are deemed not sufficiently original to be protected by copyright law, in that there is no "creative spark" in a purely descriptive picture of a product or service. *See Inspired By Design, LLC v. Sammy's Sew Shop*, LLC, No. 16-CV-2290, 2016 WL 6093778, at *9 (D. Kan. Oct. 19, 2016) (citations omitted). However, it is also true that "courts have recognized repeatedly that the creative decisions involved in producing a photograph may render it sufficiently original to be copyrightable and 'have carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as protectable elements of a photographer's work.'" *Ets-Hokin v. Skyy Spirits, Inc*., 225 F.3d 1068, 1077 (9th Cir. 2000) (quoting *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992)); *LaChapelle v. Fenty*, 812 F.Supp.2d 434, 440 (S.D.N.Y. 2011) ("A photograph may be original in the rendition of a subject. Rendition concerns not 'what is

depicted, but rather how it is depicted.' Originality in rendition may reside in the photographer's selection of lighting, shade, lens, angle, depth of field, composition, and other choices, such as manipulation of color balance, saturation, or contrast, that have an aesthetic effect on the final work.") (citing *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (further citations omitted)); *Bryant v. Gordon*, 483 F.Supp.2d 605, 614 (N.D. Ill. 2007) ("Photographs may be protected under copyright law based on the expression of the artist's originality, such as his choice of composition, lighting, shading, camera angle, background, perspective, selection of film and camera, and the expression elicited from the subjects.") (citations omitted); *see also* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2A.08[E][3][a][i] at 2A-100 to 101 (2016).

In light of the low threshold for the creativity element, and given that the types of decisions McNeese made about lighting, shading, angle, background, and arrangement of the photographs at issue have been recognized as sufficient to convey copyright protection, the Court concludes Access has not met its burden of showing the invalidity of McNeese's copyright in the photographs, and a genuine issue of material fact exists as to whether the photos are sufficiently creative, and thus sufficiently original, to merit copyright protection.

## IV.  SUBSTANTIAL SIMILARITY

The second element of a copyright infringement claim requires a finding that Access copied constituent elements of the subject work(s) that are original. *Savant Homes*, 809 F.3d at 1138. In this regard, "[a] finding that [Access] copied some aspect of [McNeese's photographs], however, would not end the court's inquiry, as liability for copyright infringement will attach only where protected elements of a copyrighted work are copied." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996) (citing *Gates Rubber*, 9 F.3d at 833). Thus, the question of whether Access infringed on McNeese's copyright turns on whether Access's publications are substantially similar to the protectable elements of McNeese's photographs. *Id*. at 1284. Access contends it is entitled to summary judgment on this issue because under the "abstraction-filtration-comparison" test[11] and scenes à faire doctrine,[12] McNeese cannot establish "substantial similarity"

---

[11] The Tenth Circuit describes the "abstraction-filtration-comparison" test thusly:

> At the abstraction step, we separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work. Then, we filter out the nonprotectable components of the product from the original expression. Finally, we compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.

*Country Kids 'N City Slicks*, 77 F.3d at 1285.

[12] Under the scenes à faire doctrine, expressive elements of a work of authorship are not entitled to protection against infringement if they are standard, stock, or

between the photo groups "as a whole" and Access's publications "as a whole," and McNeese has failed to allege Access copied a substantial portion of his work. Mot. at 22, 29.

However, as the Tenth Circuit noted in *Mitel*, the abstraction-filtration-comparison test is either unnecessary or simply inapplicable in cases where literal copying is admitted. *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1373 (10th Cir. 1997); *see also TD Bank, N.A. v. Hill*, No. 12-7188, 2015 WL 4523570, at *17 (D.N.J. July 27, 2015) (holding scenes à faire defense was inapplicable due to defendant's significant verbatim copying). In such cases, a court "may proceed directly to the protectability analysis that is normally subsumed in the filtration portion of the abstraction-filtration-comparison approach." *Mitel*, 124 F.3d at 1373.

Indeed, under the circumstances of this case, the Court finds both doctrines are inapplicable. The Court observed earlier that each individual photograph has its own individual copyright life, and Access has admitted to using multiple photographs from McNeese's registration. *See* Mot. at 29. It would be fruitless to endeavor in such a structured analysis where Access has admitted to using *identical* copies of many photographs contained in McNeese's registered

---

common to a topic, or if they necessarily follow from a common theme or setting. *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1374 (10th Cir. 1997) (citing *Gates Rubber*, 9 F.3d at 838) (further citations omitted)); *see, e.g.*, *Reece v. Island Treasures Art Gallery, Inc.*, 468 F.Supp.2d 1197, 1208 (D. Haw. 2006) (applying the doctrine to photographs).

copyright. The Court has found genuine issues of material fact exist as to whether such photographs contain the requisite originality and creativity entitling them to protection. Accordingly, Access's motion on this issue is denied.

## V.   CONTRIBUTORY/VICARIOUS COPYRIGHT INFRINGEMENT

Access next contends that because Plaintiff's copyright infringement claims fail, it is entitled to summary judgment on his claim for contributory and/or vicarious infringement. Mot. at 30. Because the Court has found summary judgment is precluded on the issue of actual copyright infringement, the Court denies Access's motion on this claim as well.

## VI.   FRAUD

McNeese's fraud claim alleges Access has concealed the extent of its use of his photographs in its business materials. Compl., ¶ 52 [Doc. No. 1]. Access contends McNeese's fraud claims lack evidentiary support because there is no evidence to suggest McNeese acted to his detriment or suffered any injury as a result of such alleged misrepresentations. "Fraud is a generic term embracing the multifarious means which human ingenuity can devise so one can get advantage over another by false suggestion or suppression of the truth." *Dani v. Miller*, 2016 OK 35, ¶ 25, 374 P.3d 779, 791 (citations omitted).[13] The elements of actionable

---

[13] The parties do not dispute that Oklahoma law applies to McNeese's fraud claims. *See Moore v. Subaru of Am.*, 891 F.2d 1445, 1448 (10th Cir. 1989) ("[T]he Oklahoma choice of law rule [with respect to tort claims] requires application of

fraud are (1) a false representation, (2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, (3) with the intention that it should be acted upon, and (4) which is relied upon by the other party to his detriment. *Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218. All elements of fraud must be present; absence of any one is fatal to the plaintiff's claim. *McCain v. Combined Commc'n Corp. of Okla., Inc*., 1998 OK 94, ¶ 11, 975 P.2d 865, 867.

"Fraud is never presumed and each of its elements must be proved by clear and convincing evidence." *Bowman*, 212 P.3d at 1218 (citations omitted); *Combs v. Shelter Mut. Ins. Co*., 551 F.3d 991, 999 (10th Cir. 2008). The "clear and convincing" standard is "the highest standard of proof that the law imposes in civil cases." *Kupersteinn v. Hoffman-Laroche*, 457 F. Supp. 2d 467, 471 (S.D.N.Y. 2006). "Also, the reliance referred to must be justifiable." *State ex rel. S.W. Bell Tel. Co. v. Brown*, 1974 OK 19, ¶ 19, 519 P.2d 491, 495. "[T]he gist of fraudulent misrepresentation is the production of a false impression ... and damage sustained as the natural and probable consequence of the acts charged." *Id*. (citations omitted).

Although fraud claims ordinarily present a question of fact, *Croslin v. Enerlex, Inc*., 2013 OK 34, ¶ 12, 308 P.3d 1041, 1046, summary judgment is

---

the law of the state with the most significant relationship to the parties.") (citations omitted); *see also Martin v. Gray*, 2016 OK 114, ¶ 10, 385 P.3d 64, 67 (same).

appropriate where, under the uncontroverted facts, a plaintiff fails to demonstrate the viability of his claim. *See, e.g., Alta Health Strategies, Inc. v. Kennedy*, 790 F.Supp. 1085, 1093 (D. Utah 1992) ("[A]llegations of fraud do not lend themselves readily to resolution by way of summary judgment. ... Even so, [s]ummary judgment is appropriate when conclusory allegations of fraud stand alone, unsupported by specific evidence pertinent to a claim of common law fraud.") (citations and internal quotation marks omitted).

Under this standard, the Court concludes summary judgment is appropriate because McNeese's evidence of fraud does not establish a triable issue in light of the "clear and convincing" evidence standard required under Oklahoma law. The Court's function at the summary judgment stage is to determine, viewing the record as a whole, whether a rational trier of fact could find in McNeese's favor on the claim. McNeese has the burden of establishing the existence of a triable issue of fact. The facts of this case, even viewed in the light most favorable to McNeese, do not support a finding of detrimental reliance by McNeese. McNeese has made no serious attempt to show actual damages stemming from the purported misrepresentations or that he decided to forego a particular course of action due to Access' statements. Accordingly, Access is granted summary judgment on McNeese's fraud claim.

In summary, the Court finds that Access' Motion for Summary Judgment should be granted with respect to McNeese's second cause of action for copyright infringement of the photographs originally entitled "012214_48 photos" (Group 2) and his third cause of action for fraud. Access' motion is denied with respect to McNeese's first cause of action for copyright infringement of the registered photographs entitled "contactsheet.pdf." (Group 1) and fourth cause of action for aiding and abetting.[14]

## CONCLUSION

Access' Motion for Summary Judgment [Doc. No. 71] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**IT IS SO ORDERED** this 10th day of March, 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[14] On August 11, 2014, the original judge assigned to this case granted in part Access' Motion to Dismiss and, *inter alia*, dismissed Plaintiff McNeese Photography's claims for copyright infringement and aiding and abetting on the grounds it failed to allege sufficient facts showing it was the legal or beneficial owner of the copyrighted material at issue [Doc. No. 21]. McNeese's claim for aiding and abetting was not dismissed and remains ripe for disposition.